SARAH F. COOPER, ADMINISTRATRIX, ETC., PLAINTIFF
IN ERROR, v. H. N. WOOD ET AL., DEFENDANTS IN ERROR.

1. WHEN A SURVIVING PARTNER INCOMPETENT TO PROVE THE PART-
NERSHIP.—In an action against two persons alleged to be copartners
for the collection of a claim against the firm, wherein service of
summons is made on one only, who answers denying the partner-
ship and his own liability as well, but dies before trial of the issues,
and his administratrix is substituted as defendant, the alleged
surviving partner is not a competent witness for the plaintiffs un-
der the statute to prove the partnership. No acknowledgment by
a surviving partner, made after the death of his copartner, will
revive a debt against the estate of the deceased partner.
2. PRACTICE IN THE INVESTIGATION OF CLAIMS AGAINST ESTATES.—
In actions involving the liability of the estates of deceased persons
courts should, in the interest of justice, and for the protection of
the interests of widows and children, afford every reasonable fa-
cility for the full investigation of every claim asserted by permit-
ting amendment of the pleadings, or the admission in evidence of
all pertinent facts tending to discredit the claim.

*Error to County Court of Lake County.*

Mr. J. E. HAVENS and Messrs. BENNETT & BENNETT,
for plaintiff in error.

Mr. C. S. LIBBY, for defendants in error.

REED, J.   If this were not a case affecting the estate of a
deceased person, requiring a speedy termination to enable a
settlement of the estate at as early a date as practicable, we
should be obliged to dismiss the suit under the rules of the
court for want of a proper abstract.   What purports to be
an abstract contains nothing but a copy of the pleadings,
and what counsel call a summary of the assignment of errors.
Nearly every supposed error arose upon the admission and
rejection of evidence, yet the abstract contains no evidence
whatever, upon the admission and rejection of which errors
are assigned, no reference to the folios or pages of the record

where it can be found; but under the circumstances of this particular case the rule will be waived, hoping such irregularities will not again occur.

The suit was brought by defendants in error (partners), against Isaac Cooper and C. H. Tibbetts, as partners, to recover the balance due upon goods alleged to have been sold to the defendants. Service was had upon Isaac Cooper, but none upon Tibbetts. The complaint is in the ordinary form, alleging a balance of $558 and interest to be due, and asking judgment. The answer of the defendant, Cooper, after denying every allegation of the complaint generally, specifically denies the existence of the partnership of the defendants, and avers, that in June, 1880, and before the debt sued for was contracted, he, the defendant, notified the plaintiffs that no partnership existed, and forbade any sale of goods to Tibbetts on his responsibility. It is also further averred in the answer that plaintiffs afterwards settled with Tibbetts individually for the amount due, including the claim in this suit, and took the individual note of Tibbetts and a trust deed upon real estate to secure the payment of the note ; that the plaintiffs accepted and received the same in satisfaction of the original indebtedness of Tibbetts. In reply plaintiffs reassert the partnership of defendants, admit the settlement made with Tibbetts, and the taking of his note and the deed of trust as security, but aver it to have been as collateral security only, and allege the non-payment of the note and a failure to realize anything upon the security.

Previous to the trial defendant Cooper died, and plaintiff in error, as administratrix, was substituted. It also appears from the record that during the trial counsel of defendant moved the court for leave to amend the answer, by alleging that the individual note of Tibbetts was further secured by a chattel mortgage upon personal property, and leave to amend was denied by the court. Trial was had to the court without a jury, resulting as near as it can be understood in a judgment against the supposed firm of Cooper & Tibbetts,

for the sum of $1,008.50 and judgment for like amount against the estate of Cooper, deceased.

The existence of the partnership between the defendants having been directly and specifically put in issue, plaintiffs, in order to recover against the estate of Cooper, were obliged to establish it affirmatively. An attempt was made to establish it by secondary evidence, such as general reputation, circumstances, etc., but this class of loose, indefinite testimony of circumstances, common report and reputation, "is not admissible except in corroboration of previous testimony, unless it be to prove the fact that the partnership otherwise shown to exist was known to the plaintiff." 2 Greenlf. on Ev., § 483. Numerous other authorities might be cited, but the proposition is so elementary and well understood it is unnecessary.

Tibbetts, the supposed partner, was put upon the stand as a witness for the plaintiffs, and testified—" I lived in Bowman, Gunnison county, Colorado, in 1880 and 1881, and was engaged in merchandising; had a partner in the business, Isaac Cooper, now deceased." This was the only direct testimony to establish the partnership which was found by the court. This was error. The supposed partner was not competent, as a witness, to establish the partnership. Sec. 4816, chapter 132, Mills Ann. Stat., is as follows:

" That no party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein, of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as the trustee or conservator of an idiot, lunatic or distracted person, or as the executor or administrator, heir, legatee or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee, unless when called as a witness by such adverse party so suing or defending." This is a copy of the statute of the state of Illinois. I can find no case in our own reports where the exact question has been determined, but it has been adjudicated and construed in that state, and directly held that

a surviving partner was incompetent by reason of his interest. See *Langley v. Dodsworth*, 81 Ill. 86 ; *Hurlbut, to Use, etc., v. Meeker's Ex's*, 104 Ill. 541.

The latter case is directly in point. It is said in the opinion, after quoting the statute : " Under this statute we are satisfied that neither J. D. Hurlbut nor D. N. Hurlbut was a competent witness for the plaintiff. They were not made defendants in the action, but were directly interested in the event of the suit. They were members of the firm of Hurlbut Bros. & Co. at the time the note was executed, and were makers of the note in suit, and hence had a direct interest in the result of the pending action."

In the course of the examination of the witness Tibbetts, the following occurred : " Q. State whether or not of your own knowledge, the account sued upon in this action has been paid ? A. Well, in my judgment it has been paid. I gave the plaintiffs a promissory note and also a chattel mortgage to satisfy that account. It was my individual note. Have never received the note in return. Plaintiffs received payment of that note. They did not receive any money—I do say the plaintiffs realized the goods in the house which I gave them in a chattel mortgage upon the goods in the Tibbetts house, to pay this account."

At this stage of the proceedings leave was asked to amend the answer, as above stated, and denied. The refusal to allow the amendment was an abuse of the discretion of the court, and may have worked great injustice to the defendant. Either the pleadings should have been allowed to have been amended, or in proof of payment all the transactions between Tibbetts and plaintiffs, and all facts of dealings in the way of payment or satisfaction should have been elicited. This becomes more apparent in the subsequent testimony of Tibbetts, when called by defendant, and in the refusal of the court to allow the witness to testify to certain facts offered in proof, which, if established, would of necessity have shown, if not full, at least partial payment by the witness. He stated that in payment of his individual note at its ma-

turity he turned over to plaintiffs the personal property covered by the chattel mortgage; that plaintiffs took possession and charge of it; no portion was ever returned to him, and that it was used by plaintiffs in the Tibbetts house at Aspen. He was then asked the value of the property. Objection was made and sustained. Defendants also attempted to prove by the witness that the witness was misled by one of the plaintiffs at the time the real property was sold under the trust deed; that plaintiff informed him that he would protect his interests, and that it was unnecessary for him to attend the sale; that he remained away and the property was bid in for a nominal sum far below its value, etc., but was not allowed to make the proof. How far the defendant might have been successful in establishing the facts contained in his offers of proof, of course cannot be known, but the opportunity should have been allowed him. It is unnecessary to follow this subject further. The whole matter should have been investigated.

In defending suits of this character estates are at great disadvantage, and to a great extent at the mercy of claimants. The actor in the transactions who did the business,— knew all the facts and details, being dead, the representative of the estate having no knowledge only that subsequently gained cannot, in the first instance, in all cases interpose all necessary defense, and courts should, in the interest of justice, and for the protection of widows and children, afford every reasonable facility for the full investigation of every asserted claim. Such facilities were not given, nor such protection to the estate, upon the trial of this cause.

Another important question, which, as far as I can ascertain, has not been determined in this court, is presented in this case, viz., whether under any circumstances, after the dissolution of the partnership, the admissions or acknowledgments of a former partner are admissible to establish a cause of action against a former partner. In England the rule for years was well settled that such admissions are competent not only to take the case out of the statute of limita-

tions, but to establish or create a firm indebtedness. It was based upon the opinion of Lord Mansfield, in *Whitcomb v. Whiting*, Doug. 652, and what Judge Story, (Story on Partnership, § 323,) did not hesitate to call "an unreasoned decision." The case has been severely criticised in the English courts. See opinion of Lord Kenyon in *Clarke v. Bradshaw*, 3 Esp. 155 ; of Lord Ellenborough in *Brandram v. Horton*, 1 Barn. & Ald. 463, and Lord Tenterden in *Arkins v. Tredgold*, 2 Barn. & Cress. 23, and the doctrine has been limited and partially overturned by late acts of parliament. In the United States considerable diversity of opinion is expressed in the different courts, some few states adhering to and following the old English decisions, but in federal courts the English doctrine has been overruled and the admissions held inadmissible ; first in the case of *Clementson v. Williams*, 8 Cr. 72, followed by Judge Story in *Bell v. Morrison*, 1 Pet. 373. In *Bispham v. Patterson*, 2 McLean (C. C.) 87, the learned judge, after reviewing the authorities, expressed his conviction in favor of the English rule, but yielded to American precedents and decided the case in harmony with them. The American rule overruling early English decisions has since been followed in those courts. See *Thompson v. Boardman*, 6 Wal. 316.

In a great majority of state courts the English doctrine has been overruled; first, in the state of New York, and followed by at least twenty other state courts. In New York the English rule was repudiated as early as *Waldon v. Sherburne*, 15 John. 409, which has been since followed in *VanKeuran v. Parmlee*, 2 Com. (N. Y.), in which the decisions of the different states are carefully and ably reviewed in the court of appeals, resulting again in overruling the English doctrine. The principal authorities on the subject will be found collected in 3 Kent's Com. 49–51.

The power of an individual partner to bind the firm during its existence arises only from the fact that each is the agent of the firm, and "it seems difficult upon principle to perceive how they can be any more than the declarations or

acts or acknowledgments of any other agent of the partnership would be after his agency has ceased." Story on Partnership, sec. 323; and see *Ellicot v. Nichols*, 7 Gill (M. D.) 85; *Thompson v. Bowman*, 6 Wall. 316. There is certainly great authority as well as reason for adopting the American rule. In this case not only was the partnership dissolved, but the party to be charged was dead, "but however the docrine may be after a dissolution in cases where all the partners are living, it is very clear that no acknowledgment by the surviving partners after the death of one of them will revive the debt against the estate of the deceased partner." Story on Partnership, § 324, *a*, and this seems also to be the English as well as American rule. See *Arkins v. Tredgold*, 2 Barn. & Cress. 23; *Slater v. Lawson*, 1 Barn. & Ad. 396; *Crallan v. Oulton*, 3 Beav. 1; *Way v. Bassett*, 5 Hare 67.

In this case not only was the party, whose estate is sought to be charged, dead, but the claim in suit prior to his death had been assumed as the individual debt of Tibbetts, his individual note and security taken in supposed extinguishment of any partnership liability, yet the witness was allowed to testify not only that the debt was originally a firm debt, but that it remained so notwithstanding the fact that previous to the death of Cooper it had apparently been regarded by all concerned as the debt of Tibbetts alone. Certainly if in any case a rule of law will close the mouth of a surviving partner, it should be applied in this, where not only the direct interest of the witness but the rule of law relieves the estate from the effects of such directly interested testimony. We have no hesitancy in saying that the admissions and statements of Tibbetts, calculated to charge the estate, were incompetent and should have been excluded. The judgment should be reversed and the cause remanded for a new trial.

*Reversed.*